

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-23-00159-CR |
| EX PARTE | § | Appeal from the |
| JORGE JUAREZ, | § | 346th Judicial District Court |
| Appellant. | § | of El Paso County, Texas |
| | § | (TC# 20220D02497) |

## MEMORANDUM OPINION

Jorge Juarez appeals the trial court's order denying his application for writ of habeas corpus.[1] Juarez asserted that Texas statutes, which define age 17 as an age affecting criminal responsibility, are unconstitutional on their face and as applied to him under the Eighth Amendment of the U.S. Constitution. *See* Tex. Fam. Code Ann. § 51.02(2); Tex. Penal Code Ann. § 8.07(b); U.S. Const. amend. VIII. Finding no error, we affirm.

## BACKGROUND

On April 25, 2022, an arrest warrant for capital murder was issued for Juarez based on a sworn complaint of an El Paso police officer. Juarez was arrested the next day and confined in the

---

[1] *See* Tex. Code Crim. Proc. Ann. art. 11.08.

El Paso County Jail under the custody of the Sheriff of El Paso County.[2] On June 30, 2022, a grand jury indicted Juarez for a single count of capital murder and the case was assigned to the 346th District Court of El Paso County. The charging instrument alleged that, on or about April 22, 2022, Juarez intentionally caused the death of Kevin Gonzalez by stabbing him with a knife, and he did so while in the course of committing or attempting to commit robbery. In a second paragraph, the instrument further alleged that a deadly weapon—namely, a knife—was used or exhibited during the commission of the charged offense, and Juarez used and exhibited the deadly weapon. Born in January of 2005, Juarez was 17 years old at the time of the alleged offense, as well as at the time of his arrest and confinement.

On March 16, 2023, Juarez filed a pretrial application for writ of habeas corpus alleging he was illegally restrained in his liberty by the State, by the 346th District Court, and by the El Paso County Sheriff's Office. *See* Tex. Code Crim. Proc. Ann. arts. 11.05 (addressing by whom a writ of habeas corpus may be issued), 11.14 (providing the application requirements). He claimed the State and the 346th District Court had unlawfully restrained his liberty by charging him with an offense under a felony indictment. He asserted he was only 17 years old at the time of the alleged offense, yet the State of Texas—by its enactment and reliance on Tex. Fam. Code Ann. § 51.02(2) and Tex. Penal Code Ann. § 8.07(b)—had defined him as an adult for criminal prosecution. He urged that, in a series of cases, the U.S. Supreme Court "ha[d] drawn a line between 17- and 18-year-olds for [Eighth] Amendment claims: [such that] [o]nly at 18 years of age can a defendant be prosecuted fully as an adult." He maintained by his habeas application that the cited Texas statutes were unconstitutional on their face and as applied to him.

---

[2] On the warrant of arrest, a criminal magistrate judge set Juarez's original bond at $1,500,000. However, on May 2, 2022, Juarez's bond was reduced to $500,000.

On May 22, 2023, the trial court held an evidentiary hearing. Juarez presented testimony from two expert witnesses. Between his two witnesses, Juarez asked the State to confirm it had stipulated that he was 17 years old on the date alleged by the charging instrument, which it did. Juarez's first witness, April Thomas, Ph.D., testified she was employed as an assistant professor of legal psychology at the University of Texas at El Paso. She described her area of expertise as centered at the intersection of developmental psychology and legal psychology, particularly with a focus on adolescent risk behavior and juvenile delinquency. On direct examination, she was asked to explain the concept of culpability based on her expertise. Without objection, she answered that "culpability" referred to "one's blameworthiness for their criminal actions." She further explained that adolescents are less culpable than adults, generally speaking, due to their developmental immaturity. She described that, across different ages, studies show psychosocial maturity dips during mid-adolescence before it reaches adult levels, which does not occur "until the mid-20s and even into age 30." As a result, she opined that adolescents, including 17-year-olds, are generally less culpable than adults in the commission of a crime. She claimed it would better serve punishment goals like retribution, deterrence, rehabilitation, and incapacitation, to only prosecute 17-year-olds in the juvenile system.

As a second witness, Jaime Arbona, M.D., a licensed psychiatrist, gave testimony on his interview and evaluation of Juarez. Dr. Arbona testified that Juarez was cognitively and psychosocially underdeveloped for his age, but he was not intellectually disabled. He confirmed his opinions were based on his education, training, and evaluation of Juarez.

Following the hearing, the trial court denied Juarez's application for habeas relief. Juarez appealed.

### A. Age of criminal responsibility

In 1973, the passage of Title 3 of the Family Code along with a conforming amendment to the Penal Code resulted in the creation of the juvenile justice system of Texas. *In re S.L.L.*, 906 S.W.2d 190, 192 (Tex. App.—Austin 1995, no writ) (citing Act of May 25, 1973, 63rd Leg., R.S., ch. 544, 1973 Tex. Gen. Laws 1460 (codified at Tex. Fam. Code Ann. §§ 51.01–56.02)); *Miller v. State*, 640 S.W.2d 404, 406 (Tex. App.—San Antonio 1982), *aff'd en banc*, 708 S.W.2d 436 (Tex. Crim. App. 1984). Adoption of this Juvenile Justice Act protected juvenile rights to the extent they were not otherwise protected by the U.S. and Texas Constitutions. *In re S.L.L.*, 906 S.W.2d at 192. In 1987, the legislature added the determinate-sentencing provisions to the Family Code. *Id.*; *see also* Tex. Fam. Code Ann. §§ 53.045, 54.04, 54.11. By means of this sentencing scheme, Texas enacted "an alternative to the criminal justice system and adult certification for those juveniles charged with violent delinquent conduct." *In re S.L.L.*, 906 S.W.2d at 192.

Pursuant to this juvenile system, the Family Code defines the term "child" as a person "ten years of age or older and *under* 17 years of age." Tex. Fam. Code Ann. § 51.02(2) (emphasis added). And concomitant with that provision, the Penal Code includes a carve-out provision, with multiple sub-parts, providing for minimal ages affecting criminal responsibility. *See* Tex. Penal Code Ann. § 8.07(a)–(e). Except for its sub-parts not relevant here, § 8.07(a) provides that "[a] person may not be prosecuted for or convicted of any offense that the person committed when younger than 15 years of age[.]" *See* Tex. Penal Code Ann. § 8.07(a)(1)–(7). Moreover, for persons over 15, but younger than 17, § 8.07(b) provides the following:

> Unless the juvenile court waives jurisdiction under Section 54.02, Family Code, and certifies the individual for criminal prosecution or the juvenile court has previously waived jurisdiction under that section and certified the individual for

4

criminal prosecution, a person may not be prosecuted for or convicted of any offense committed *before reaching 17 years of age* except an offense described by Subsections (a)(1)–(5).

Tex. Penal Code Ann. § 8.07(b) (emphasis added). As for punishment, § 8.07(c) provides that "[n]o person may, in any case, be punished by death for an offense committed while the person was younger than 18 years." Tex. Penal Code Ann. § 8.07(c).

### B.    Eighth Amendment of the U.S. Constitution

The Eighth Amendment of the U.S. Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII. "The provision is applicable to the States through the Fourteenth Amendment." *Roper*, 543 U.S. at 560. As explained by the U.S. Supreme Court, "the Eighth Amendment guarantees individuals the right not to be subjected to excessive sanctions." *Id*. "The right flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned to the offense.'" *Id*. (quoting *Atkins v. Virginia*, 536 U.S. 304, 311 (2002)). "By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." *Id*.

## CRUEL AND UNUSUAL PUNISHMENT

In his sole issue on appeal, Juarez contends that Texas Family Code Ann. § 51.02(2) and Texas Penal Code Ann. § 8.07(b)—defining 17-year-olds as adults for criminal prosecution—are unconstitutional on their face and as applied to him. He contends this practice of defining 17-year-olds as adults, to punish them more severely, offends the Eighth Amendment of the U.S. Constitution because: (1) society has rejected the practice; and (2) children are less culpable than adults for criminal conduct. He thus maintains the district court should have granted him pretrial habeas relief from this unconstitutional prosecution as an adult.

5

**A. Standard of review and applicable law**

We review for an abuse of discretion a trial court's ruling on a pretrial application for habeas relief. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). The trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc). On review, we must give deference to the trial court's resolution of historical facts supported by the record, as well as to the application of law to fact questions that turn on credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). However, when the resolution of any ultimate question turns on an application of legal standards, we review the trial court's ruling de novo. *Id.*

Article 11.08 of the Texas Code of Criminal Procedure allows an applicant indicted for a criminal offense, whose guilt has not been formally adjudicated, to challenge his confinement by pretrial writ application. *See* Tex. Code Crim. Proc. Ann. art. 11.08. An applicant for habeas corpus relief must prove his or her claim by a preponderance of the evidence. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). "[T]he writ of habeas corpus is an extraordinary remedy that is available only in the absence of an adequate remedy at law." *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017).

**B. Analysis**

**(1) Cognizability**

Because a pretrial request for habeas corpus relief is an extraordinary remedy, we must determine whether Juarez's claim—which asserts the State is pursuing a criminal prosecution prohibited under the Eighth Amendment—is cognizable on pretrial habeas application. *See Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) ("[W]hether a claim is even cognizable

6

on pretrial habeas is a threshold issue that should be addressed before the merits of the claim may be resolved."). "Pretrial habeas followed by an interlocutory appeal, is an extraordinary remedy." *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016) (citing *Ex parte Ellis*, 309 S.W.3d at 79). Ordinarily, on review, such claims are not cognizable because of applicant's ability to appeal trial errors in the event of a conviction. *See Ex parte McCullough*, 966 S.W.2d 529, 531 (Tex. Crim. App. 1998). That is, if a district court denies a pretrial habeas petition, an applicant may still appeal that ruling on a direct appeal. *See id.* If an appellate court concludes that grounds for habeas relief are not cognizable on appeal, it must affirm the trial court's denial of habeas corpus relief. *Ex parte Gutierrez*, 989 S.W.2d 55, 56 (Tex. App.—San Antonio 1998) (citing *McCullough*, 966 S.W.2d at 531; *Ex parte Yates*, 966 S.W.2d 743, 744 (Tex. App.—San Antonio 1998, pet. ref'd)). Importantly, "[t]his remedy is reserved 'for situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review.'" *Ex parte Perry*, 483 S.W.3d at 895.

In particular, the Court of Criminal Appeals has held that claims involving a right to speedy trial, a challenge to the denial of a motion to suppress, or collateral estoppel that does not allege a double jeopardy claim, are disallowed on pretrial habeas. *Id*. As well, "pretrial habeas is generally not available to test the sufficiency of the charging instrument or to construe the meaning and application of the statute defining the offense charged." *Id.* (citing *Ex parte Ellis*, 309 S.W.3d at 79). As for challenges based on conditions of confinement, a habeas applicant must challenge either the legality or the duration of his incarceration, but he may not seek relief for circumstances that are deemed "the terms and conditions of his confinement[.]" *Ex parte Benavides*, 801 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, writ dism'd w.o.j.); *see also Ex parte Lockett*, 956 S.W.2d 41, 42 (Tex. Crim. App. 1997) (en banc) (holding that the applicant's failure to challenge

either "the fact or the length of his confinement" deprives the court of jurisdiction to hear his claim). In this respect, "a writ of habeas corpus is not available to secure determination of a question that, even if determined in the [applicant's] favor, would not result in his immediate release." *Ex parte Benavides*, 801 S.W.2d at 537 (citing *Ex parte Ruby*, 403 S.W.2d 129, 130 (Tex. Crim. App. 1966) (per curiam)).

As an extraordinary remedy, pretrial habeas is an appropriate vehicle to assert a facial challenge to the constitutional validity of a statute. *Ex parte Perry*, 483 S.W.3d. at 895. Accordingly, "facial constitutional challenges . . . are cognizable on pretrial habeas regardless of whether the particular constitutional right at issue would be effectively undermined if not vindicated prior to trial." *Id.* at 896. Conversely, the Court of Criminal Appeals has held that "pretrial habeas cannot be used to advance an as-applied constitutional challenge to a statute." *Id*. at 895. Yet, in doing so, it further explained that "[w]hen we say that as-applied challenges are not cognizable pretrial, what we mean is that, unlike with facial challenges, the unconstitutionality of a statute as applied is not, *in the abstract*, a basis for invoking the pretrial writ." *Id*. at 896 (emphasis in original). As a result, the Court further cautioned that "certain types of as-applied claims may be raised by pretrial habeas because the particular constitutional right at issue in the as-applied challenge is the type that would be effectively undermined if not vindicated prior to trial." *Id*.

With cognizability in mind as to the as-applied challenge, we begin with Juarez's facial challenge of the two statutes at issue.

### (2) The facial challenge

Juarez argues the Texas practice of defining a 17-year-old as an adult—so as to impose more severe punishment than what is otherwise imposed by a juvenile court—is unconstitutional under the Eighth Amendment of the U.S. Constitution as interpreted by the U.S. Supreme Court. Juarez urges that children are less culpable for criminal conduct than adults; and modern society has rejected the practice of trying them as adults.

Relying on a line of U.S. Supreme Court cases, Juarez argues the prosecution and punishment of a 17-year-old as an adult violates the Eighth Amendment. First, he cites to *Roper v. Simmons*, a U.S. Supreme Court case holding that execution of individuals who were under 18 years of age at the time of the commission of an offense violated the Eighth and Fourteenth Amendments of the U.S. Constitution. 543 U.S. at 578–79. Second, he cites to *Graham v. Florida*, where the U.S. Supreme Court held the Eighth Amendment prohibits the imposition of a sentence of life-without-parole on a 16-year-old offender who had not committed a homicide related offense. 560 U.S. at 82. And third, he cites to *Miller v. Alabama*, a case in which the U. S. Supreme Court held that a sentencing scheme which mandated the imposition of a sentence of life imprisonment without the possibility of parole for juvenile offenders violated the Eighth Amendment. 567 U.S. 460, 479 (2012). Juarez broadly asserts that "*Roper* and its progeny draw a bright line" between 18-year-olds and less culpable 17-year-olds, arguing that "the former may be treated as adults; the latter may not[.]" Because we conclude that Juarez misconstrues and overly extends the holdings of the *Roper* line of cases, we disagree.

Each of these three cited cases involve the constitutionality of sentencing schemes that either imposed a death penalty sentence or mandatory life-without-parole. For example, in *Miller*, the U.S. Supreme Court narrowly held "that mandatory life without parole for those under the age

9

of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 567 U.S. at 465. Unlike Juarez's contention, however, the cited cases are directed at particular aspects of sentencing schemes, not at statutes defining adulthood or setting an age affecting criminal culpability.

Indeed, by their plain text, the challenged statutes do not impose mandatory sentences or punishment at all. Instead, the Family Code provision defines the meaning of "child" as used throughout the Code, while the Penal Code provision sets forth provisions addressing ages affecting criminal responsibility. *See* Tex. Fam. Code Ann. § 51.02(2); Tex. Penal Code Ann. § 8.07(b). Moreover, Juarez has not cited to any controlling authority, and we have found none, which extend the holdings in *Roper*, *Graham*, and *Miller* to these age-defining provisions. In addressing a similar claim, however, at least one appellate court from Illinois has found that statutes of this type determine the forum in which 17-year-olds are to be tried, but do not otherwise set out the punishment that defendants are to receive. *See, e.g.*, *People v. Pacheco*, 991 N.E.2d 896, 907 (Ill. App. Ct. 2013) (holding that an automatic imposition of any adult sentence on a juvenile defendant as a result of an automatic transfer statute does not violate the Eighth Amendment and concluding *Roper*, *Graham*, and *Miller* do not prohibit a defendant from being subject to the same mandatory minimum sentence as an adult). Lastly, in *Lewis v. State*, the Court of Criminal Appeals observed that, after the reformations by the appellate courts, offenders who were under 18 years old at the time of their charged offense can no longer be sentenced to life without parole under Texas law. *Lewis v. State*, 428 S.W.3d 860, 863–64 (Tex. Crim. App. 2014) (citing Tex. Penal Code Ann. § 12.31). That is, under § 12.31, juvenile offenders in Texas do not now face life without parole at all. *Id*. As a result, Juarez's case does not fall within the scope of the *Roper* line of cases. Because the statutes at issue impose no punishment at all, Juarez has failed

10

to show that either provision imposes cruel and unusual punishment in violation of the Eighth Amendment. Accordingly, we conclude that Juarez did not establish, as a matter of law, that the statutes at issue were unconstitutional on their face.

We overrule the first part of Juarez's sole issue in which he raised a facial challenge.

### (3) The as-applied challenge

As for his as-applied challenge, Juarez contends his challenge is cognizable because his "right to be free of cruel and unusual punishment would be undermined by waiting to decide his claim until after punishment is imposed, a process that could take years."

Although *Ex parte Perry* noted that the Court had described "that as-applied challenges are not cognizable before trial," it also acknowledged it allowed "certain types of claims to be raised by pretrial habeas because the rights underlying those claims would be effectively undermined if not vindicated before trial." *Id*. at 895 (citing *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001)). Under that category of rights, the Court noted it had "so far, recognized the constitutional protections involving double jeopardy and bail." *Id*. at 895–896. The rationale for doing so derived from *Abney v. United States*, which involved a pretrial denial of a double jeopardy claim that was appealed to the U.S. Supreme Court. *Id*. at 896 (citing *Abney v. U. S.*, 431 U.S. 651, 662 (1977)).

In *Ex parte Perry*, the Court noted the explanation given in *Abney* for permitting such interlocutory appeal in a case of that nature "is that the defendant would lose an aspect of the Double Jeopardy Clause's protection by being forced to endure a trial that the Double Jeopardy Clause was designed to prohibit." *Id*. That is, "[i]f a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." *Id*. (quoting *Abney*,

11

431 U.S. at 662) (emphasis in original). Adopting *Abney's* reasoning, the Court of Criminal Appeals has since held that a "right not to be exposed to double jeopardy" is cognizable on pretrial habeas and reviewable in an interlocutory appeal from the habeas proceeding. *Id*. (quoting *Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex. Crim. App. 1982)). Relying on that rationale, the Court in *Ex parte Perry* extended the interlocutory appeal exception to as-applied claims alleging an infringement of a government official's own power. *Id*. at 898.

Here, Juarez also relies on the rationale of *Ex parte Perry* to argue that his as-applied challenge is cognizable before trial because "the right at issue would be effectively undermined if not vindicated prior to trial." To illustrate his claim, he urges the process could take years to complete. In the meantime, however, he contends "he has been (and continues to be) locked up with adult criminals for an offense alleged to have occurred when he was a child." He claims, then, that "he is being deprived of the opportunities for rehabilitation and protections available in the juvenile system." That is, "[i]f his claim is decided years from now—after conviction and appeal and perhaps 11.07 habeas litigation—he will be too old to benefit from the juvenile system and too hardened by years in adult prisons for it to matter."

As evidentiary support for his argument, he points to the testimony of his expert, Dr. Arbona, who opined that Juarez was significantly underdeveloped both cognitively and psychosocially. The basis for this opinion included multiple factors including: (1) that Juarez lacked resources and was in a state of poverty; (2) that his father was not part of his life, and Juarez understood that his father was in and out of jail; and (3) that Juarez witnessed his mother sustain verbal and physical abuse. Consequently, as Juarez points out, Dr. Arbona posited that despite Juarez's immaturity, he could develop further in a "structured, protective, reliable, dependable environment." Juarez implies that his adult confinement lacks these protections.

Advancing his as-applied challenge, Juarez points out that he was 17 at the time of the alleged offense. But he claims that the Texas laws that he challenges "work[] together as a single punishment scheme to punish seventeen-year-olds as adults and deny them the benefits of the juvenile justice system." Relying on the *Roper* line of cases, he contends that "[t]he Supreme Court holds the line of adulthood is at 18 years." Thus, he urges that the challenged statutes operate to keep him out of the very system that could possibly provide the environment that he needs. For that reason, he claims the only way to protect his Eighth Amendment interest is to decide his claim pretrial. In doing so, he maintains this Court should reverse the district court and grant relief in the form of dismissing the indictment in this case. On de novo review, we disagree that Juarez has established that his as-applied challenge is cognizable.

As earlier stated, it has been consistently held that, except when double jeopardy or separation of power is involved, that pretrial habeas is *not* cognizable unless the rights underlying a claim would be effectively undermined if not vindicated before trial. *Ex parte Perry*, 483 S.W.3d at 895; *Ex parte Ellis*, 309 S.W.3d at 79. Most notably, this limitation includes a constitutional challenge based on an Eighth Amendment violation. *See Ex parte Powell*, 570 S.W.3d 417, 421 (Tex. App.—Waco 2019, no pet.) (concluding that an adult applicant's Eighth Amendment claim was not cognizable in a pretrial writ of habeas corpus); *Ex parte Ragston*, 402 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2013), *aff'd sub nom. Ragston v. State*, 424 S.W.3d 49 (Tex. Crim. App. 2014) (determining that applicant's pretrial habeas complaint contending that because he was 17 years old on the date of the alleged offense, and that imposition of a capital felony sentence would violate his Eighth Amendment rights, was not cognizable on a pretrial writ).

Accordingly, we conclude that Juarez's as-applied challenge to the constitutionality of Texas's statutes defining the age of criminal culpability at age 17 years old is not cognizable on a

pretrial writ. *See Ex parte Ellis*, 309 S.W.3d at 81–82. Thus, we overrule the remaining part of Juarez's sole issue raising an as-applied challenge.

In sum, Juarez failed to establish the trial court abused its discretion in denying his application for writ of habeas corpus. We overrule Juarez's sole issue.

## CONCLUSION

We affirm the trial court's judgment denying habeas relief.

GINA M. PALAFOX, Justice

April 22, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)